UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY; and
ST. PAUL MERCURY INSURANCE
COMPANY,

        Plaintiffs,

  v.

HIGHLINE SCHOOL DISTRICT
NO. 401; SCHOOLS INSURANCE
ASSOCIATION OF WASHINGTON;
and R.T.,

        Defendants.

C17-1917 TSZ

ORDER

THIS MATTER comes before the Court on a motion for summary judgment brought by defendant Schools Insurance Association of Washington ("SIAW"), docket no. 27. Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following order.

**Background**

Beginning on September 1, 2009, SIAW provided insurance coverage to defendant Highline School District No. 401 ("Highline"), issuing a new Memorandum of Coverage each year, including for the period from September 1, 2017, to September 1, 2018. *See* Exs. C-K to Rosner Decl. (docket no. 28); Ex. A to Gellert Decl. (docket no. 31-1). In

ORDER - 1

November 2017, R.T., a former student at Evergreen High School, sued Highline, alleging that she was raped in 1994 at an off-campus apartment by a friend of her two dance teachers, who were Highline employees. *See* Ex. A to Rosner Decl. (docket no. 28-1). In December 2017, St. Paul Fire and Marine Insurance Company ("St. Paul"), which also provided insurance to Highline, initiated this action to obtain declaratory relief concerning coverage issues. *See* Compl. (docket no. 1). St. Paul named as defendants Highline, SIAW, and the plaintiff in the underlying litigation (*i.e.*, R.T.). SIAW now moves for summary judgment, seeking a ruling that it owes no duty to defend and no duty to indemnify Highline.

**Discussion**

The parties appear to agree that, with respect to the interpretation of the applicable Memorandum of Coverage, Washington law governs. Washington courts construe insurance policies as a whole, giving the policy the "fair, reasonable, and sensible construction" that an average person purchasing insurance would. *Vision One, LLC v. Phila. Indem. Ins. Co.*, 174 Wn.2d 501, 512, 276 P.3d 300 (2012); *see also Panorama Vill. Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co.*, 144 Wn.2d 130, 137, 26 P.3d 910 (2001). Inclusionary clauses are liberally construed in favor of coverage, while exclusionary provisions are interpreted strictly against the insurer. *Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia ("Wall")*, 379 F.3d 557, 560 (9th Cir. 2004) (summarizing Washington law). If the language of a policy is "clear and unambiguous," the Court must "enforce it as written and may not modify it or create ambiguity where none exists." *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 666,

ORDER - 2

15 P.3d 115 (2000). On the other hand, if a provision is ambiguous, the Court may rely on extrinsic evidence of the parties' intent to interpret the clause, and may resolve any remaining ambiguities against the insurer as the drafter of the policy. *Id.* A term of an insurance contract is ambiguous when it is "fairly susceptible" to being interpreted in two different ways, both of which are reasonable. *Id.*

Under Washington law, the duty to defend is different from and broader than the duty to indemnify. *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 404, 229 P.3d 693 (2010). Although the duty to indemnify arises only if the policy "*actually covers*" the insured's liability, the duty to defend is triggered if the policy "*conceivably covers*" the allegations in the underlying complaint. *Id.* (emphasis in original). In evaluating whether the insurer owes a duty to defend, the Court must liberally construe the underlying complaint to determine whether the alleged facts could, if proven, impose liability on the insured that would be covered under the policy.[1] *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wn.2d 793, 802-03, 329 P.3d 59 (2014); *Am. Best Food*, 168 Wn.2d at 404-05 (citing *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 58 P.3d 276 (2002)). If "any reasonable interpretation of the facts or the law" could result in coverage, the insurer must defend. *Am. Best Food*, 168 Wn.2d at 405.

---

[1] The analysis must ordinarily be performed within the "eight corners" of the insurance contract and the underlying complaint, but this rule has two exceptions: (i) if coverage is not obvious from the face of the complaint but could exist, the insurer must investigate and give the insured the benefit of the doubt concerning the duty to defend; and (ii) if the allegations in the complaint are ambiguous or conflict with facts known to the insurer, facts outside the complaint may be considered. *Expedia*, 180 Wn.2d at 803-04. Extrinsic facts, however, may only be used to trigger the duty to defend; they may not be used to deny coverage. *Id.* at 804.

ORDER - 3

The policy at issue contains three insuring agreements[2] of relevance in this matter: (i) a "General Liability" insuring agreement; (ii) a "Wrongful Act" insuring agreement; and (iii) a "Miscellaneous Professional Liability" insuring agreement. *See* Exs. C-K to Rosner Decl. (docket no. 28); Ex. A to Gellert Decl. (docket no. 31-1). SIAW contends that it owes no duty to defend and no duty to indemnify under any of these insuring agreements. Because the Court concludes that SIAW has a duty to defend under the General Liability insuring agreement, the Court need not and does not address the parties' arguments concerning the other two insuring agreements.

In contrast to the Wrongful Act and Miscellaneous Professional Liability insuring agreements, which are "claims made" policies, the General Liability insuring agreement is triggered by an Occurrence, which means "an accidental happening, including continuous or repeated exposure to substantially the same general harmful conditions which results in Bodily Injury." Ex. A to Gellert Decl. (docket no. 31-1 at 48); *see also* Exs. H-J to Rosner Decl. (docket no. 28). In the General Liability insuring agreement, SIAW is responsible for any amounts that Highline becomes "legally obligated to pay as damages because of Bodily Injury . . . first arising out of an Occurrence during the Coverage Period." *E.g.*, Ex. A to Gellert Decl. (docket no. 31-1 at 61). The Coverage Period began, at the earliest, on September 1, 2009, *see* Ex. C to Rosner Decl. (docket

---

[2] In its motion for summary judgment, SIAW asked for a ruling that no coverage is owed under the separate "Automobile Liability" insuring agreement. Highline has conceded that the Automobile Liability insuring agreement does not apply. *See* Resp. at 2 n.2 (docket no. 30). SIAW's motion for summary judgment is therefore GRANTED in part as to the Automobile Liability insuring agreement.

ORDER - 4

no. 28-1), but the rape at issue was perpetrated in 1994, *see* Ex. A to Rosner Decl. (docket no. 28-1 at 3-4). For purposes of interpreting the insuring clause, the key dispute between the parties is whether the term "during the Coverage Period" modifies the word "Occurrence," as SIAW contends, or the phrase "Bodily Injury . . . first arising out of," as Highline suggests.

The last antecedent rule supports SIAW's view, *see* William Strunk Jr. & E.B. White, THE ELEMENTS OF STYLE 30 (4th ed. 2000) ("Modifiers should come, if possible, next to the words they modify."); *see also* Terri LeClercq, *Doctrine of the Last Antecedent: The Mystifying Morass of Ambiguous Modifiers*, 2 LEGAL WRITING: J. LEGAL WRITING INST. 81, 99 (1996), but Highline's reading is also reasonable. Thus, the Court concludes that the insuring clause is ambiguous,[3] and must be construed against the drafter, *i.e.* SIAW. *See Weyerhaeuser*, 142 Wn.2d at 666. As Highline indicates, to proceed on her underlying claim, R.T. must establish that she has timely pleaded it, *i.e.*, commenced suit within three years after either the sexual abuse occurred or the act or the

---

[3] The cases cited by the parties do not resolve the ambiguity. In *City of San Buenaventura v. Ins. Co. of State of Penn.*, 719 F.3d 1115 (9th Cir. 2013), on which SIAW relies, the two policies at issue promised indemnification for, respectively, "loss caused by property damage 'first arising out of an Occurrence during the Policy Period'" or "liability incurred because of 'property damage arising out of an occurrence during the Policy Period.'" *Id.* at 1118. The Ninth Circuit construed such language to require "the occurrence causing the damage to have been during the policy period." *Id.* The Ninth Circuit, however, was applying California, not Washington, law, *id.* at 1117, and it did not address whether the wording at issue was ambiguous. Moreover, as indicated in the authorities cited by Highline, Washington courts have reached results opposite from the Ninth Circuit's conclusion in *San Buenaventura*. In *Castle & Cooke, Inc. v. Great Am. Ins. Co.*, 42 Wn. App. 508, 711 P.2d 1108 (1986), the Washington Court of Appeals ruled that "the determination of 'occurrence' is made by reference to when the injury giving rise to the claim occurred," *id.* at 517, and in *Gruol Constr. Co. v. Ins. Co. of N. Am.*, 11 Wn. App. 632, 524 P.2d 427 (1974), the Washington Court of Appeals reasoned that dry rot resulting from dirt backfilled against a building during construction was "continuous" damage and therefore covered even though the initial negligent act, *i.e.*, the backfilling, occurred before the policy was issued, *id.* at 635-37.

injury or condition caused by the act was discovered.  <u>See</u> RCW 4.16.340.  To survive a motion raising the statute of limitations as an affirmative defense, R.T.'s claim must be predicated on an injury or condition discovered after November 7, 2014 (three years before the underlying action was commenced on November 7, 2017).  In such event, the Bodily Injury "first arising out of" the rape would arguably be within the Coverage Period.

Because the duty to defend is broader than the duty to indemnify, and the Court must engage in a liberal construction to determine whether the policy "*conceivably covers*" the allegations in the underlying complaint, <u>see</u> <u>Am. Best Food</u>, 168 Wn.2d at 404-05; <u>see also</u> <u>Expedia</u>, 180 Wn.2d at 802-03, the Court concludes SIAW has not met its burden to show it "is entitled to judgment as a matter of law" that it owes no duty to defend under the General Liability insuring agreement.  <u>See</u> Fed. R. Civ. P. 56(a).  Thus, SIAW's motion for summary judgment is DENIED in part as to its duty to defend, and DEFERRED in part, pending resolution of the underlying lawsuit, with regard to any duty to indemnify under the General Liability, Wrongful Act, and/or Miscellaneous Professional Liability insuring agreements.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)     Defendant Schools Insurance Association of Washington's motion for summary judgment, docket no. 27, is GRANTED in part as to coverage under the Automobile Liability insuring agreement, DENIED in part as to the duty to defend defendant Highline School District No. 401 in the litigation initiated by R.T., and

DEFERRED in part, pending resolution of the underlying action, as to any duty to indemnify under the General Liability, Wrongful Act, and/or Miscellaneous Professional Liability insuring agreements.

    (2)    The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 31st day of August, 2018.

*[signature]*

Thomas S. Zilly
United States District Judge