UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY; and
ST. PAUL MERCURY INSURANCE
COMPANY,

              Plaintiffs,

  v.

HIGHLINE SCHOOL DISTRICT
NO. 401; and SCHOOLS
INSURANCE ASSOCIATION OF
WASHINGTON,

              Defendants.

C17-1917 TSZ

ORDER

THIS MATTER comes before the Court on a motion for summary judgment, docket no. 70, brought by plaintiffs St. Paul Fire and Marine Insurance Company and St. Paul Mercury Insurance Company (collectively, "St. Paul"), as well as a motion for leave to amend, docket no. 76, brought by defendants Highline School District No. 401 ("Highline") and Schools Insurance Association of Washington ("SIAW"). Having reviewed all papers filed in support of, and in opposition to, each motion, as well as the operative pleadings, the Court enters the following order.

**Background**

In November 2017, a former student of Evergreen High School sued Highline, alleging that she was raped in 1994 at an off-campus apartment by a friend of her two

ORDER - 1

dance teachers, who were Highline employees.  *See* Order at 1-2 (docket no. 40).  In December 2017, St. Paul initiated this action seeking a declaratory judgment that it does not owe coverage under various insurance policies in effect between October 1, 2000, and September 1, 2009.  *See* Compl. (docket no. 1); *see also* 3d Am. Compl. (docket no. 48).  In August 2019, the underlying lawsuit brought against Highline by its former student and her adult daughter[1] settled for $550,000; the settlement was funded as follows:  $100,000 from Highline, $225,000 from St. Paul, and $225,000 from SIAW.  *See* Rosner Decl. at ¶ 18 (docket no. 86); Zawitoski Decl. at ¶ 5 (docket no. 72).

**Discussion**

**A. St. Paul's Motion for Summary Judgment Against SIAW** [2]

St. Paul seeks, on a contribution theory, reimbursement from SIAW of the amounts paid by St. Paul to defend Highline ($114,696.22) and to resolve the claims at

---

[1] Although St. Paul named the former student as a defendant only by her initials (*i.e.*, "R.T."), it identified R.T.'s daughter as Clotelle Najanique Tucker.  *See* 3d Am. Compl. (docket no. 48).  In its October 2017 letter denying coverage under certain policies in effect from September 2004 through September 2008, St. Paul referred to R.T. by her first and last names, and St. Paul's letter was eventually filed in this matter by SIAW without redaction.  *See* Ex. A to Rosner Decl. (docket no. 86).  The Court has not sua sponte sealed this letter because R.T.'s identity was revealed when St. Paul joined R.T.'s daughter by her full name.  Other materials, however, submitted by Highline, were also not adequately redacted and contained the dates of birth and social security numbers for R.T. and her daughter.  *See* Exs. D & E to McFarland Decl., Ex. 2 to Ashbaugh Decl. (docket no. 83).  Upon discovering this breach of Local Civil Rule 5.2, the Court directed the Clerk to seal the offending declaration, but by then, the document had been in the public view for almost two months.  The lawyers for all parties are DIRECTED to collaborate and to send, within seven (7) days of the date of this Order, correspondence to R.T. and her daughter (through their attorney, if appropriate), advising them that their personal data identifiers have been compromised.

[2] SIAW asks the Court to deny St. Paul's motion or, in the alternative, to defer ruling pursuant to Federal Rule of Civil Procedure 56(d) pending further discovery.  In light of the Court's ruling on St. Paul's summary judgment motion, SIAW's Rule 56(d) request is STRICKEN as moot.

ORDER - 2

issue ($225,000). St. Paul contends that SIAW owes coverage and St. Paul does not, and thus, SIAW must reimburse St. Paul for the amounts St. Paul has paid to defend Highline and secure a settlement. St. Paul's motion lacks merit for two reasons: (i) St. Paul never pleaded any claim against SIAW, and (ii) St. Paul has not met the burdens set forth in Federal Rule of Civil Procedure 56.

### 1. **No Claim Pleaded Against SIAW**

The only claim alleged in St. Paul's operative pleading is for declaratory judgment against Highline. *See* 3d Am. Compl. (docket no. 48). This sole claim seeks declaratory judgment that no coverage is owed by St. Paul to Highline (referred to in the pleading as the "District") under three specific policy provisions. *Id.* at ¶¶ 167-69. SIAW is not even mentioned in the cause of action, and the Third Amended Complaint contains no claim for contribution from SIAW or prayer for any monetary relief other than attorney's fees and costs. Moreover, the operative pleading does not include any allegations concerning SIAW's status as Highline's insurer (as opposed to a co-insured) or the Memoranda of Coverage ("MOCs") issued by SIAW to Highline each year from September 2009 to the present, which form the basis of St. Paul's claim for contribution. Having failed to properly sue SIAW, St. Paul is not entitled to summary judgment against SIAW.

### 2. **Failure to Satisfy Rule 56 Standards**

Even if St. Paul could cure the pleading problem, it could not establish the requisite absence of factual disputes and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). St. Paul cannot prove any claim for contribution from SIAW without first demonstrating

ORDER - 3

that SIAW owes coverage to Highline. St. Paul has made no such showing. Instead, its summary judgment motion is premised on the erroneous theory that the Court has concluded as a matter of law that SIAW must indemnify Highline with respect to the claims made in the underlying lawsuit. The Court has made no such ruling.[3] Rather, the Court has observed that the ambiguity in the policy language cannot be resolved as a matter of law.[4] See Minute Order at ¶ 1 (docket no. 45). St. Paul has offered no basis for construing the insuring agreements at issue in favor of Highline and against SIAW.

Moreover, even if St. Paul could demonstrate that, as a matter of law, Highline's reading of the policy language is correct, St. Paul has not shown that the underlying facts support a determination of coverage. St. Paul has provided no evidence that, in settling the related matter, the parties agreed (i) the former student and/or her daughter suffered a

---

[3] In deciding SIAW's earlier motion for summary judgment, the Court merely indicated that the question of whether SIAW had a duty to defend Highline was a triable matter; the duty to indemnify was not even at issue. See Order at 6 (docket no. 40) ("SIAW has not met its burden to show it 'is entitled to judgment as a matter of law' that it owes no duty to defend under the General Liability insuring agreement."); see also Minute Order at ¶ 2 (docket no. 45) ("SIAW is reminded that such Order [entered September 4, 2018, docket no. 40] merely denied its motion for summary judgment. The Court did not grant summary judgment in favor of Highline or make a ruling that SIAW has a duty to defend Highline, and the parties may proceed to trial on the issue if they wish.").

[4] The question of coverage under the MOCs turns on the proper interpretation of the provision indicating that SIAW is responsible for any amounts Highline becomes "legally obligated to pay as damages because of Bodily Injury . . . first arising out of an Occurrence during the Coverage Period." See Order at 4 (docket no. 40) (citing Ex. A to Gellert Decl. (docket no. 31-1 at 61)). SIAW suggested that the term "during the Coverage Period" modifies the word "Occurrence," while Highline argued that SIAW owes coverage if the "Bodily Injury . . . first aris[es] . . . during the Coverage Period." See id. at 5. Which of these reasonable meanings is consistent with the parties' intent cannot be determined without resort to extrinsic evidence, which was not offered in connection with SIAW's previous motion for summary judgment. See Minute Order at ¶ 1 (docket no. 45).

ORDER - 4

1  "Bodily Injury," and (ii) any such "Bodily Injury" first arose on or after September 1,

2  2009, the beginning of the policy periods for SIAW's MOCs.  Absent a stipulation or

3  settlement agreement along those lines, St. Paul cannot support its contention that, as a

4  matter of law, SIAW owes coverage to Highline.

**B.    St. Paul's Motion to "Dismiss" Highline**

St. Paul asserts that Highline should be "dismissed from this action," *see* Plas.' Mot. at 3 (docket no. 70), because settlement of the underlying lawsuit rendered the coverage issues moot.  St. Paul is mistaken.  Highline contributed funds to settle the related matter.  If coverage is owed by St. Paul,[5] and if the amount paid by Highline is less than the applicable deductible, then Highline has a basis for seeking indemnification from St. Paul.  Thus, the declaratory judgment claim and counterclaim between St. Paul and Highline present an actual case or controversy.

**C.    SIAW's and Highline's Motion to Amend**

SIAW and Highline wish to amend their pleadings to withdraw their mutual cross-claims.  No amendment to the pleadings is required for SIAW and Highline to voluntarily dismiss the cross-claims they have asserted against each other.  The Court will treat their

---

[5] Given the unspecified terms of the underlying settlement, the Court concludes St. Paul has failed to demonstrate that it does not, as a matter of law, owe coverage.  The three policies issued by St. Paul for the years October 2000 to October 2003 obligated St. Paul to pay amounts Highline is "legally required to pay as damages for covered bodily injury" that "happens while this agreement is in effect" and "is caused by an event."  Exs. J-L to Zawitoski Decl. (docket nos. 59-10 – 59-12).  The term "bodily injury" is defined to include "mental anguish" and "emotional distress" resulting "at any time" from "any physical harm."  *Id.*  The record is silent with regard to whether the settlement at issue compensated the former student and/or her daughter for "bodily injury" that happened during the policy periods, *i.e.*, from October 2000 to October 2003.

ORDER - 5

joint motion for leave to amend as a stipulation of dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii).

SIAW also moves to assert counterclaims against St. Paul for breach of contract, contribution, indemnity, and subrogation.[6] <u>See</u> Ex. E to Rosner Decl. (docket no. 77). No purpose would be served by allowing SIAW to amend its answer and to add counterclaims against St. Paul when St. Paul has not asserted any claim against SIAW, and SIAW is not a defendant in this action.

Highline seeks to add a breach of contract counterclaim against St. Paul. <u>See</u> Ex. 2 to Ashbaugh Decl. (docket no. 78). Highline has previously asserted counterclaims against St. Paul for declaratory judgment that St. Paul is obligated to indemnify Highline and for attorney's fees and other expenses pursuant to <u>Olympic S.S. Co. v. Centennial Ins. Co.</u>, 117 Wn.2d 37, 811 P.2d 673 (1991), and <u>McGreevy v. Ore. Mut. Ins. Co.</u>, 128 Wn.2d 26, 904 P.2d 731 (1995). <u>See</u> Highline's Ans. (docket no. 49). In moving to now plead a breach of contract counterclaim, Highline has not explained either (i) how Highline would benefit from pursuing such legal theory when the declaratory judgment and <u>Olympic Steamship</u> fees it has requested would accomplish the same result, or (ii) why Highline failed to pursue the breach of contract counterclaim before the deadline for amending pleadings, <u>i.e.</u>, November 26, 2018, <u>see</u> Minute Order (docket no. 39), or in response to St. Paul's Third Amended Complaint, which was filed on December 4, 2018.

---

[6] SIAW, however, has already pleaded a counterclaim against St. Paul for declaratory judgment that SIAW is entitled to contribution, indemnity, and subrogation from St. Paul. <u>See</u> SIAW's Ans. at ¶ 11.9(ii)-(iv) (docket no. 50).

ORDER - 6

Highline knew by October 4, 2017, that St. Paul had denied coverage under the policies in effect between September 2004 and September 2008. <u>See</u> Rosner Decl. at ¶ 1 & Ex. A (docket no. 86). Highline was also aware by December 27, 2017, that St. Paul was defending Highline under a reservation of rights pursuant to the policies in effect between October 2000 and October 2003. <u>See id.</u> at ¶ 2 & Ex. B. Highline has provided no basis for being excused from complying with the deadlines set by the Court.

**<u>Conclusion</u>**

For the foregoing reasons, the Court ORDERS:

(1) St. Paul's motion for summary judgment, docket no. 70, is DENIED;

(2) SIAW's and Highline's joint motion, docket no. 76, for leave to amend their pleadings is DENIED, except as to their mutual cross-claims, with respect to which their joint motion is treated as a stipulation of dismissal pursuant to Rule 41(a)(1)(A)(ii);

(3) The Clerk is DIRECTED to update the docket to reflect that (a) SIAW is not a defendant in this matter, (b) SIAW is not a counterclaimant in this action, and (c) SIAW's cross-claim against Highline and Highline's cross-claim against SIAW have been voluntarily dismissed with prejudice and without costs;

(4) The only matters remaining for trial are St. Paul's claim against Highline for declaratory judgment and Highline's counterclaim against St. Paul for declaratory judgment, both of which involve the issue of whether St. Paul owes a duty to indemnify Highline;

(5) The case is currently set for a jury trial on September 14, 2020, and the remaining parties are DIRECTED to file a Joint Status Report within thirty (30) days of the date of this Order indicating whether any basis exists for demanding a jury; and

(6) The Clerk is further DIRECTED to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 10th day of February, 2020.

/s/ Thomas S. Zilly

Thomas S. Zilly
United States District Judge

ORDER - 8